**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

**LAW OFFICE OF ALBERT R. LIMBERG**
Albert R. Limberg, Esq. (211110)
alimberg@limberglawoffice.com
3667 Voltaire Street
San Diego, CA 92106
Telephone: (619) 344-8667

*Attorneys for Plaintiff,*
Evan Craig

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN CRAIG,<br><br>                Plaintiff,<br><br>          v.<br><br>USAA FEDERAL SAVINGS BANK; AND AMERICAN CORADIUS INTERNATIONAL LLC,<br><br>                Defendants. | Case No.: '24CV1784 GPC MMP<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.   **FAIR DEBT COLLECTION PRACTICES ACT;**<br><br>II.  **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT;**<br><br>III. **CALIFORNIA IDENTITY THEFT ACT;**<br><br>IV.  **BREACH OF CONTRACT; AND**<br><br>V.   **INTRUSION UPON SECLUSION**<br><br>**JURY TRIAL DEMANDED** |

CASE NO.:                                                                                     *Craig v. USAA Federal Savings Bank, et al.*
**COMPLAINT**

## INTRODUCTION

1. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

2. In enacting the California's Identity Theft Act, Cal. Civ. Code §§1798.92 et seq. ("CITA"), the California Legislature found that the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information. Accordingly, CITA was enacted to combat the lack of effective laws and legal remedies in place. To protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits. Cal. Civ. Code §1798.1(a), (c).

3. EVAN CRAIG ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of USAA FEDERAL SAVINGS BANK ("USAA") and AMERICAN CORADIUS INTERNATIONAL, LLC ("ACI") with regard to attempts by Defendants to unlawfully and abusively collect various fraudulent debts from Plaintiff, inclusive of inaccurate credit reporting to, and by, the Credit Bureaus and this conduct caused Plaintiff damages.

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

7. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 for supplemental state claims.

10. This action arises out of Defendants' violations of (i) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"); (ii) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, et seq. ("RFDCPA"); (iii) California Identity Theft Act, Cal. Civ. Code § 1798.82, et seq. ("CITA"); (iv) breach of contract; and, (v) intrusion upon seclusion.

11. Because Defendants conduct business within the State of California, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in San Diego County; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person who resided in El Cajon, California, from whom various debt collectors sought to collect fraudulent consumer debts which are alleged to be due and owing from Plaintiff.

14. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); and, 15 U.S.C. § 1692a(3).

15. Plaintiff is a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.82(d).

16. USAA is a financial services company operating from the State of Texas.

17. ACI is a company operating from the State of New York.

18. USAA; and, ACI are both a "claimant" as that term is defined by Cal. Civ. Code § 1798.92(a).

19. USAA and ACI in the ordinary course of business, regularly, on behalf of themselves or others, engages in "debt collection" as that term is defined by Cal. Civ. Code § 1788.2(b), and are each therefore a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c) and and 15 U.S.C. § 1692a(6).

20. Defendants are also each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

21. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

22. This action arises out of a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d) and 15 U.S.C. § 1692a(5) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

23. Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

24. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

25. Plaintiff recently learned that Plaintiff was the victim of an extensive identity theft operation operated by an individual who identified himself as Ken Phillips ("Phillips").

26. Plaintiff later discovered Phillips as not this individual's real name nor was Phillips planning to assist Plaintiff in any way.

27. Instead, Phillips betrayed Plaintiff's trust by utilizing Plaintiff's personal identifying information to open a significant number of fraudulent accounts, including one such account with USAA.

28. Plaintiff met Phillips in late 2018 when Plaintiff was considering investing in what he believed to be a legitimate business.

29. During the course of these discussions, Plaintiff provided Phillips with various pieces of personal identifying information at Phillips' request under the guise of being related to the investment opportunity.

30. Phillips then utilized Plaintiff's information to open at least nine financial accounts in Plaintiff's name but without Plaintiff's knowledge or consent.
31. In February 2020, Plaintiff attempted to obtain a home loan only to learn that his credit score had dropped from 815 to 600.
32. Immediately thereafter, Plaintiff began investigating this issue as the result of the denial and the negative repercussions poor credit can have on Plaintiff's employment.
33. Plaintiff believes the total fraud to be approximately $270,000.00.
34. Plaintiff believes fraudulent lines of credit were open with Discover, Goldman Sachs, NFCU, SoFi, and USAA.
35. The Discover account at issue herein ends in 6702 was opened on October 17, 2018 for $25,000.
36. The Goldman Sachs account was opened on October 18, 2018 in the amount of $20,000.
37. The NFCU account was opened on October 16, 2018 in the amount of $50,000.00.
38. The SoFi account was opened on October 18, 2018 in the amount of $49,000.00.
39. The USAA account was opened on October 17, 2018 in the amount of $35,000.00.
40. Plaintiff was an active duty servicemember in the United States Navy when all of these accounts were opened.
41. Due to the invasive nature of Phillips' fraud, Plaintiff has obtained the assistance from the Federal Bureau of Investigation and the El Cajon Police Department.

42. Plaintiff was temporarily successful in being absolved of the various frauds; however, Defendants have recently reinitiated their collection efforts regarding the fraudulent debts.

### *Federal Bureau of Investigation*

43. Plaintiff's disputes of the fraud eventually led him to the Federal Bureau of Investigation.
44. Plaintiff then learned that Phillips has defrauded more than 50 individuals for a total of approximately $19,000,000.00.
45. Plaintiff received a written communication from Elizabeth Appleton, a Victim Specialist with the FBI, dated April 21, 2021.
46. This written communication confirmed that Plaintiff has "been identified as a victim of a federal crime…" and the "case is currently being investigated by the [FBI]."

### *El Cajon Police Department*

47. To further assist him, Plaintiff sought the assistance of the El Cajon Police Department.
48. Plaintiff met with Officer Lorie Schwar on April 9, 2021 to report Phillips' crimes.
49. Plaintiff's police report was assigned Report Number 21014980.
50. Therein Plaintiff explained the basis for Plaintiff's belief that Plaintiff is the victim of identity theft and named Phillips as the suspect.

### *Federal Trade Commission*

51. Plaintiff also completed multiple Identity Theft Reports with the Federal Trade Commission.
52. Plaintiff's initial FTC Fraud Affidavit was completed on April 9, 2021.
53. Therein, Plaintiff explained the basis for Plaintiff's belief that Plaintiff is the victim of identity theft.

54. Said Affidavit lists the account number, balance, and opening date for each fraudulent account.
55. In addition, Plaintiff also identified Phillips as the fraudster.
56. Plaintiff completed an additional FTC Fraud Affidavit on May 3, 2021 in order to provide further support for his disputes.
57. This May 3, 2021 FTC Fraud Affidavit additionally identified Officer Schwar and included Plaintiff's notarized signature.

### *The Initial Dispute Process*

58. Unfortunately, Plaintiff was forced to make significant payments towards these fraudulent debts in order to protect Plaintiff's employment with the Navy.
59. Plaintiff then began investigating his next steps once his deployment ended.
60. Plaintiff believed that he would eventually be absolved of these fraudulent debts since the FBI and El Cajon Police Department were involved.
61. Plaintiff began disputing the various fraudulent accounts in or around 2021.
62. These disputes included written and telephonic disputes directly to the furnishers as well as indirect disputes submitted to the Credit Bureaus.
63. In each dispute, Plaintiff explained that he is the victim of identity theft and demanded that the following accounts be deleted: Prosper, Service Credit Union, Kitsap Credit Union, SoFi, Goldman Sachs, PenFed, USAA, NFCU, and Discover.
64. Plaintiff also provided extensive documentation to support Plaintiff's disputes, including: The FTC Fraud Affidavits, Plaintiff's Driver License, Police Report, The FBI's Victim Identification Letter, and Plaintiff's credit report wherein Plaintiff highlighted each of the disputed accounts.
65. Plaintiff then received the results of the purported investigations conducted by each of the Furnishers and Credit Bureaus.

66. While many of these disputes were initially successful, Plaintiff unfortunately learned that the fraudulent accounts were later reinserted on his credit reports.
67. Specifically, USAA reinserted the fraudulent debts to Plaintiff's Equifax, Experian, and Trans Union Credit Reports.
68. Plaintiff had no other recourse but to retain counsel and file a lawsuit regarding the reinsertion of the fraudulent tradeline.

### *Craig I*

69. Plaintiff initiated the initial action entitled *Craig v. Discover Bank, et al.* on August 5, 2021 which was assigned case number 3:21-cv-01407-W-AGS ("Craig I").
70. USAA was listed as a defendant in Craig I.
71. Following litigation, Plaintiff resolved his disputes with USAA on or about April 5, 2022 pursuant to a Confidential Settlement Agreement and Release ("CSAR").

### *United States of America v. Heather Ann Campos, et al.*

72. While Craig I was pending, Plaintiff learned the United States Attorney's Office initiated prosecution of Phillips' fraud ring in the Southern District of Texas in the matter of *United States of America v. Heather Ann Campos*, case no. 4:22-cr-33-S2 on March 16, 2022.
73. This action laid out the fraudulent scheme and validated Plaintiff's identity theft claims.

### *ACI Dispute Process*

74. To Plaintiff's surprise, USAA transferred the fraudulent debt to ACI for collection in violation of the CSAR.
75. In so doing, USAA misrepresented the fraudulent debt to a legitimate debt that Plaintiff was responsible for paying.

76. Through this conduct, USAA violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, USAA violated Cal. Civ. Code § 1788.17.

77. Through this conduct, USAA violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the fraudulent debt in connection with the collection of the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, USAA violated Cal. Civ. Code § 1788.17.

78. Through this conduct, USAA violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, USAA violated Cal. Civ. Code § 1788.17.

79. Through this conduct, USAA violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, USAA violated Cal. Civ. Code § 1788.17.

80. Through this conduct, USAA violated 15 U.S.C. § 1692f(1) by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, USAA violated Cal. Civ. Code § 1788.17.

81. Through this conduct, USAA violated Cal Civ. Code § 1798.93.

82. On April 15, 2024, Plaintiff received a telephone call from ACI seeking to collect this fraudulent USAA debt.

83. Plaintiff conveyed he is the victim of identity theft regarding the fraudulent USAA debt during this telephonic communication.

84. ACI then sent Plaintiff a collection letter dated April 15, 2024 demanding $22,506.19 from Plaintiff regarding the fraudulent USAA debt.

85. On May 3, 2024, ACI left a voicemail for Plaintiff also seeking to collect the fraudulent USAA debt.

86. Plaintiff prepared a dispute for ACI on or about May 6, 2024.

87. Through counsel, Plaintiff explained the basis for Plaintiff's belief that he is the victim of identity theft.

88. Plaintiff also provided substantiating documents including the March 16, 2022 Indictment of the fraud ring; a letter from the Federal Bureau of Investigation dated April 21, 2021 identifying Plaintiff as the victim of a federal crime; Plaintiff's April 9, 2021 FTC Fraud Affidavit; Plaintiff's May 3, 2021 FTC Fraud Affidavit; and, Plaintiff's April 9, 2021 El Cajon Police Report.

89. Despite receipt of this dispute, ACI continues to hold Plaintiff liable for the fraudulent USAA debt.

90. Through this conduct, ACI violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, ACI violated Cal. Civ. Code § 1788.17.

91. Through this conduct, ACI violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the fraudulent debt in connection with the collection of the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, ACI violated Cal. Civ. Code § 1788.17.

92. Through this conduct, ACI violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, ACI violated Cal. Civ. Code § 1788.17.

93. Through this conduct, ACI violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, ACI violated Cal. Civ. Code § 1788.17.

94. Through this conduct, ACI violated 15 U.S.C. § 1692f(1) by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, ACI violated Cal. Civ. Code § 1788.17.

95. Through this conduct, ACI violated Cal Civ. Code § 1798.93.

96. Defendants' conduct has caused Plaintiff emotional distress.

97. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

98. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large charge-off mischaracterize Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

99. Moreover, Plaintiff is incredibly concerned that this issue direct impact on Plaintiff's employment and long-term military benefits.

100. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

101. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

102. By intentionally reporting continuing obligations, Defendants acted in conscious disregard for Plaintiff's rights.

103. To engage in collection efforts despite the fraudulent nature of this account shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

104. The continued pursuit of Plaintiff through direct collection efforts despite the fraudulent nature of these accounts shows that the Furnishers took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

105. Since Plaintiff's efforts to be absolved of the fraudulent debts were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692-1692(P) (FDCPA)

## [AGAINST ACI]

106. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

108. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)
## [AGAINST ALL DEFENDANTS]

109. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

111. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from the Furnishers.

## COUNT II
## VIOLATIONS OF CALIFORNIA'S IDENTITY THEFT ACT
## CAL. CIV. CODE § 1798.92-1798.97
## [AGAINST ALL DEFENDANTS]

112. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113. The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.92, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.92.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

114. As a result of each and every violation of Cal. Civ. Code § 1798.92, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

## COUNT III
## BREACH OF CONTRACT
## [AGAINST USAA]

115. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116. On April 14, 2022, Plaintiff and USAA entered into a CSAR the terms, in part, released Plaintiff from the USAA debt at issue.

117. Subsequent to the CSAR, USAA then transferred the invalid debt to ACI for collection against Plaintiff.

118. As a direct and proximate result of USAA's breach of the CSAR by transferring an invalid debt to ACI, Plaintiff has suffered damages, including actual, consequential, incidental, and attorneys' fees and costs according to proof at trail.

## COUNT IV
## VIOLATIONS OF INTRUSION UPON SECLUSION
## [AGAINST ALL DEFENDANTS]

119. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

120. The tort of intrusion upon seclusion protects an individual against one "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 724.) A defendant is liable for invasion of privacy if "the intrusion would be highly offensive to a reasonable person." (Id., quoting Rest.2d Torts, § 652B; see also Guzzetta, Cal. Prac. Guide: Privacy Law (2021) ¶ 2:320.) The tort of intrusion upon seclusion does not require that the defendant publish or otherwise make public private information.

121. The elements of the tort of intrusion upon seclusion are: (i) intrusion into a private place, conversation, or matter; and (ii) in a manner that is highly offensive to a reasonable person. (*Taus v. Loftus*, supra, 40 Cal.4th at p. 725, quoting *Shulman v. Group W Productions, Inc*. (1998) 18 Cal.4th 200, 231.)

122. Here, Plaintiff pleads that USAA sold, transferred, or assigned the invalid debt to ACI along with Plaintiff's PII.

123. Attributing an invalid debt, and also transferring all the necessary PII for the collection of that debt are an intrusion upon seclusion in a manner that would be highly offensive to a reasonable person.

124. As a direct and proximate result of USAA and ACI's intrusion upon Plaintiff's right to reasonable expectation of seclusion of his PII, Plaintiff has suffered damages, including actual, consequential, incidental, and attorneys' fees and costs according to proof at trail.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1), against Defendant;

- An award of statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A), against Defendant;
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), against Defendant
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against each named Defendant individually;
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against Defendant;
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against Defendant;
- An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);
- Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5),
- Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c);
- Damages pursuant to Plaintiff's breach of contract claim;
- Punitive damages according to proof as to the intrusion upon seclusion claims;
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

125. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 2, 2024                                   Respectfully submitted,

**LOKER LAW, APC**

By: ___/s/ Matthew M. Loker___
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF